

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bryan F. Williams
City Attorney
Galveston, Texas

Dear Sir:

Opinion Number O-3479
Re: Answering question relative
to use of funds donated and
granted by the State under
H.B. 22, Forty-fifth Legis-
lature, Regular Session,
1937.

We have your request for our opinion on two questions,
the first of which reads as follows:

"Can the City of Galveston receive and use
funds collected during the period covered by
H. B. 22, adopted by the 45th Legislature at
its Regular Session, for the purpose of aiding
and paying interest on and provide a sinking
fund for bonds of the city to be issued, the
proceeds of which will be used for purposes
specified in the Act, to-wit, exclusively for
the elevation and raising of the streets, ave-
nues, alleys, sidewalks and lots in said city,
above calamitous overflows and for securing
and protecting such filling, or, to put it dif-
ferently, may funds granted by that Act be used
only in connection with bonds of the city which
had been issued prior to its adoption?"

The pertinent part of H. B. 22, of the Forty-fifth
Legislature, Regular Session, reads as follows:

Caption —

"An Act to amend Chapter 3 of the Acts of the
Regular Session, of the 39th Legislature, the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

same being an Act entitled: 'An Act to aid
the City of Galveston in elevating and rais-
ing such city so as to protect it from calami-
tous overflows by donating and granting to it
the State ad valorem taxes and a part of the
occupation and poll taxes collected on property
and from persons in Galveston County for a period
of ten years, and to provide a penalty for their
misapplication' by extending the provisions of
said Act for a period of five years from Sept-
ember 1, 1938, and declaring an emergency".

Section 1 of the amendatory Act reads as follows:

"Section 1. That Chapter 3 of the Acts of the
Regular Session of the 39th Legislature, be amend-
ed so as to hereafter read as follows:

" 'Section 1. That for a period of forty years,
commencing with the fiscal year beginning September
1, 1903, and ending September 1943, there be and
there are hereby donated and granted by the State
of Texas to the City of Galveston the net amount
of money, or so much thereof as may be necessary,
collected from the following taxes: (here the law
enumerates the various taxes donated)'

"Section 2. (The same as the prior law).

"Section 3. (The same as the prior law).

"Section 4. (The same as the prior law).

"Section 5. The moneys herein and hereby grant-
ed and donated to the City of Galveston are declared
to be a trust fund for the purpose of aiding the City
of Galveston in paying the interest and sinking fund
upon an issue of bonds heretofore issued, the proceeds
of which bonds have been used exclusively for the ele-
vation and raising of the streets, avenues, alleys,
sidewalks and lots in said city, above calamitous
overflows, and for securing and protecting much fill-

30

You will note that Section 1 of the amendatory Act amends not only Section 1 of the Act to be amended, that is, Chapter 3 of the Thirty-ninth Legislature, but also in Section 5 is found some slight change with reference to the use of such granted and donated funds. Section 2 of the amendatory Act is the emergency clause, which reads as follows:

"The fact that several reductions in the State ad valorem tax rate during the past few years make it impossible for the City of Galveston to meet its obligations on those grade-raising bonds heretofore issued and maturing annually after September 1938 and until 1946, unless the said City of Galveston continues to receive aid from the State of Texas for a period of five years, creates an emergency and an imperative public necessity that the constitutional rule providing that bills be read on three several days shall be suspended, and such rule is therefore suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted".

Before proceeding to analyze the foregoing quoted sections of the law we think it well to quote Section 5 of Chapter 3, Acts of the Regular Session of the Thirty-ninth Legislature, to the extent necessary to show the change brought about by the amendatory Act. Said section reads, in part, as follows:

"For the purpose of aiding the City of Galveston in paying the interest and sinking fund upon an issue or issues of bonds heretofore issued and to be issued, the proceeds of which have been and are to be used exclusively for the elevation and raising of the streets, avenues, alleys, sidewalks and lots in said city above calamitous overflows and for securing and protecting such filling".

We deem it proper to state in the beginning that the paramount purpose of all rules of statutory construction is

Honorable Bryan F. Williams, page #4

to give effect to the legislative purpose. By referring to
the caption, above quoted, we find that the purpose of the
amendatory Act is to extend the provisions of the prior Act.
The Act amended provided for the donation and grant of taxes
to pay bonds heretofore issued and which thereafter might be
issued. Obviously, the grant in said Act contemplated the
payment of bonds which might be issued subsequent to the ef-
fective date of the Act, but certainly within the period cov-
ered by the grant. Therefore, the caption of the amendatory
Act, providing for the extension of the provisions of the Act
amended, merely provided a further donation of taxes to pay
bonds issued pursuant to the prior Act, and we think the con-
ditions attaching to the use of such funds, as indicated by
the change in Section 5, legally comes within the terms of
the Act. In 106 A. L. R. 789, we find the following expres-
sion, which in our opinion supports this conclusion:

> "An Act to amend another Act, the former setting
> out the latter's title, is as comprehensive as the
> Act amended, and any provision which might have been
> inserted in the original Act may be incorporated in
> the amendatory Act without violating the constitution-
> al provision that the subject of an Act shall be ex-
> pressed in the title".

It occurs to us that any other construction would en-
danger the entire Act. If the condition appearing in Section
5 is held to be so material as to be violative of the constitu-
tional provision that the title of an Act shall express the
subject treated therein, the Act in its entirety would be jeop-
ardized by reason of the failure of the caption of the amenda-
tory Act to give notice of such change. It will be observed
that the amendatory Act, that is, H. B. 22 of the Forty-fifth
Legislature, does not have a savings clause such as would per-
mit the striking down of sections, phrases or words, and leave
the remainder of the Act standing as a valid and effective law.
Therefore, in answer to your first question, we hold that the
change as indicated in Section 5 is not material, and in our
opinion the funds granted by this Act can be used only for the
retirement of bonds issued prior to its adoption.

Honorable Bryan F. Williams, page #5

Relative to your second question, you have set out the following facts:

The City of Galveston now has outstanding two series of bonds, one being designated as Grade-Raising, Filling and Drainage Bonds of 1923, which were issued in 1924 in the aggregate principal amount of $1,250,000 for the purposes as stated in them and in the ordinance authorizing them "of filling, grading, raising, paving, draining and otherwise protecting and improving the streets, avenues, alleys, public grounds, blocks, outlots and lots in said city, in the area lying north of the southern line of Avenue J, and west of the east line of 40th Street and extending to the city limits", and the other being designated Grade-Raising, Filling and Drainage Bonds of 1925, issued in 1925, in the aggregate amount of $2,000,000 for the purpose as stated in them and in the ordinance authorizing them, "of elevating and raising the streets, avenues, alleys, sidewalks and lots in said city, above calamitous overflows and for securing and protecting such filling".

Funds received by the City of Galveston under the Acts of the Legislature have been applied to payment of principal of and interest on bonds of the last mentioned series as they matured. Bonds of that series now outstanding are subject to redemption and the city has on hand funds received under the State Aid Act, above detailed, sufficient to retire $345,000 of those bonds which it has called for redemption and will retire on June 1, 1941, and should receive from such source sufficient funds to retire the entire balance of that series on December 1, 1941, which it expects to do. Your question is: Whether or not after the retirement of these bonds the City of Galveston may continue to receive the taxes collected prior to 1943 and apply the funds so received upon the payment of the bonds of the series first above mentioned, that is, the Grade-Raising, Filling and Drainage Bonds of 1923.

Referring to the Act it will be seen that the funds made available are granted and donated for the purpose of aiding the City of Galveston in paying the interest and sinking fund upon an issue of bonds heretofore issued, the proceeds of which bonds have been used exclusively for the elevation and raising of the streets, avenues, alleys, sidewalks and lots in

Honorable Bryan F. Williams, page #6

said city, above calamitous overflows and for securing and protecting such filling. The only limitation appearing in this section of the Act is that the bonds shall have heretofore been issued and the proceeds thereof used exclusively for the purposes enumerated therein. It is true that the emergency clause refers to obligations maturing between the years 1938 and 1946, but the well-settled law on the subject of emergency clauses is to the effect that such clauses are not added for the purpose of clarifying or declaring the intention of the Legislature nor to explain the express language used. In the case of M-K-T Ry. Co. v. Thomason, 280 S. W. 325, the court said:

"Emergency clauses are added to set forth reasons for suspension of rule requiring reading on three separate days and to put the bill into immediate effect, not to declare legislative intent".

Generally, an emergency clause is regarded as insufficient if there is no fact event or state or condition of affairs mentioned which the Legislature determines creates the emergency. See 25 R. C. L. 801. We think the proper conclusion to be that the donation covered by H. B. 22, supra, was intended to pay all bonds issued prior to the effective date of the amendatory Act, the proceeds of which had been used exclusively for the purposes enumerated in the Act. It appears that the issue or series of 1923 provided purposes not contemplated by the tax donation act, and if such proceeds were used for purposes other than those enumerated in the Act the bonds could not be properly paid with the taxes donated by said Act, but in our opinion such funds could be used to retire the bonds to the extent the proceeds thereof were applied toward the accomplishment of the purposes enumerated in the Act. If, as a matter of fact, the proceeds of this issue were used for purposes contemplated by the Act, then it is our opinion that all of said donated funds may be used to pay the interest and sinking fund requirements of such issue.

Trusting that the foregoing satisfactorily answers your inquiry, we are

Very truly yours

APPROVED AUG 21, 1941

ATTORNEY GENERAL OF TEXAS

Gerald C. Mann

By Clarence E. Crowe

CEC-s    ATTORNEY GENERAL OF TEXAS

Clarence E. Crowe
Assistant

APPROVED OPINION COMMITTEE BEB CHAIRMAN